UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORDA
MIAMI DIVISION

CASE NO. 1:25-cv-21914-DPG

OSVALDO OJITO,
ROBERT CUMMINGS,
RAFAEL CRUZ-MUNOZ, and
EDUARDO BENEDETTI,

Plaintiff,

v.

RAYMOND GLOBAL, INC.,

Defendant.
_______________________________/

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S RAFAEL CRUZ-MUNOZ'S MOTION TO COMPEL BETTER RESPONSES AND RESPONSIVE DOCUMENTS TO PLAINTIFF'S SECOND REQUEST FOR PRODUCTION**

COMES NOW Defendant, RAYMOND GLOBAL, INC. ("Defendant" or "Raymond"), by and through its undersigned counsel, and hereby responds in opposition to Plaintiff's Rafael Cruz-Munoz's Motion to Compel Better Responses and Responsive Documents to Plaintiff's Second Request for Production (the "Motion") and states as follows:

## I. INTRODUCTION

Plaintiff, RAFAEL CRUZ-MUNOZ ("Plaintiff"), characterizes his Second Requests as a "targeted effort" to test Raymond's stated reason for closing the Miami South Florida office. D.E. 51 at p. 2. The requests themselves demonstrate otherwise. They seek five years of office and company financial information, yearly data for every Raymond office, every architect employed or retained by Raymond, resumes, ages and employment agreements for non-parties, organization charts augmented with employee ages, and yearly lists of every employee and age across the

company. Plaintiff then asks the Court to compel all of it because he wishes to prove that Defendant should have evaluated the Miami office differently.

Plaintiff is entitled to test pretext. Defendant has not prevented Plaintiff from doing so. Defendant has agreed to produce, among other things, W-2s from Plaintiff's employment, documents sufficient to show Miami-office income, profit and operating expenses for 2022 and 2023, and documents sufficient to show projects referred by Miami-office employees and related income for the period immediately preceding the closure. What Defendant has objected to is Plaintiff's effort to transform this individual ADEA case into an enterprise-wide audit of Defendant's accounting, staffing and business decisions. That distinction is important. The Eleventh Circuit permits a plaintiff to expose "weaknesses, implausibility’s, inconsistencies, incoherencies, or contradictions" in an employer's stated reason, but a plaintiff may not simply substitute his business judgment for the employer's or "quarrel with the wisdom" of the decision. *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1265-66 (11th Cir. 2010). The discovery permitted here should be sufficient to test whether Defendant honestly relied on the Miami office's financial condition — not unlimited discovery designed to decide whether Defendant made the best financial or operational choice.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 26(b)(1) limits discovery to nonprivileged matters that are relevant to a party's claim or defense and proportional to the needs of the case. Although discovery is broad, it is not unlimited. *See generally id.*

## III. ARGUMENT

### A. Requests 2–7: Defendant Has Agreed to Produce the Financial Information Most <u>Closely Tied to the Decision at Issue.</u>

Requests 2 through 7 seek documents concerning the Miami | South Florida office's income, profits and expenses and Plaintiff's individual income, profits and expenses from January 2019 through February 2, 2024. Defendant agreed to produce nonprivileged documents sufficient to show the Miami | South Florida office's income, profits and operating expenses for 2022 and 2023—the two full years immediately preceding the November 2023 decision to close the office.

Plaintiff nevertheless asks the Court to require every requested financial record back to 2019. Plaintiff's asserted reason is that he believes Defendant allocated revenue among offices or entities incorrectly over a five-year period. D.E. 51 at p. 6. That contention illustrates the problem with the Motion: Plaintiff is seeking discovery to reconstruct years of internal accounting and then argues that Defendant should have characterized the office differently. The relevant question is not whether Plaintiff can devise a different accounting model after the fact; it is whether Defendant honestly relied on its stated business reason when it made the challenged decision. *Alvarez*, 610 F.3d at 1266.

The 2022-2023 production directly addresses the office's financial performance in the period immediately preceding its closure. Earlier years are progressively less probative and substantially expand the accounting burden. Plaintiff's own Motion identifies February 2020 as the start of his employee status, while acknowledging he was an independent contractor in 2019. D.E. 51 at p. 6. Nothing in the Motion explains why 2019 financial records (or 2020-2021) are necessary to test the November 2023 decision. The Court should uphold Defendant's reasonable temporal limitation.

Requests 4, 5 and 7 are even further removed from Defendant's stated reason because they focus on Plaintiff's individual profitability. Defendant did not state that Plaintiff personally was unprofitable; the decision was to close the Miami | South Florida office **in its entirety**. Evidence

that Plaintiff believes he was individually profitable does not answer whether Defendant honestly believed the office, as a whole, should be closed. The Motion's argument that a profitable employee should have been transferred elsewhere is an improper challenge to the wisdom of Defendant 's business decision, not a basis for years of additional financial discovery.

**B. Request 8: Does Not Require Raymond to Create an Organization Chart That Does Not Exist.**

Request 8 seeks organization charts "segmented by office location and title and age of each employee." Defendant responded that it has no organization charts showing employee ages for the relevant period. Plaintiff does not identify an existing responsive chart. Instead, he speculates that a company engaged in government contracts "must" have a database that can be queried to create the information he wants. D.E. 51 at p. 7. Federal Rule of Civil Procedure 34 requires production of responsive documents and ESI within a party's possession, custody, or control - it does not convert a request for production into an interrogatory requiring the responding party to create a new customized chart or statistical compilation. If no responsive organization chart exists, there is nothing to compel under Request 8.

Plaintiff also seeks to use Request 8 to conduct an enterprise-wide age-trend analysis from 2019 forward. That is materially broader than the request itself and depends on speculation that Defendant's average age "migrated" downward. D.E. 51 at p. 7. Such a theory does not justify compelling the creation of a company-wide demographic study containing the confidential information of nonparties in this single plaintiff case.

**C. Requests 9–13 and 21: Seek Sweeping Company-Wide Personnel Discovery Without a Proper Comparator Limitation.**

Requests 9 through 13 seek information about every architect employed or retained by Defendant from 2019 through the present, including resumes, curricula vitae, ages and

employment agreements. Request 21 seeks a yearly list of every Defendant employee from 2019 through 2024 with each employee's age. The requests are not limited to Florida-licensed architects, the Miami office, persons who performed Plaintiff's duties, positions available when the office closed, or employees subject to the challenged decision. They therefore sweep in employees and contractors who could not plausibly be comparators for a five-year period.

Plaintiff argues that broader discovery is appropriate because the office-closure decision was made at a high corporate level. That does not make every employee in every office a comparator or every architect's resume relevant. As the Eleventh Circuit noted in *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1084 (11th Cir. 1990), "A vague possibility that loose and sweeping discovery might turn up something suggesting that the structuring of the RIF was discriminatorily motivated does not show particularized need and likely relevance that would require moving discovery beyond the natural focus of the inquiry." (internal citations omitted). In other words, broader discovery requires a particularized showing of likely relevance, not merely the possibility that company-wide data could review something. *Id.*

The requested materials also implicate substantial privacy interests of non-parties. Ages, resumes, employment agreements and personnel-related materials concerning employees and contractors throughout the company should not be compelled absent a focused showing that those individuals are genuinely comparable to Plaintiff or otherwise connected to the challenged decision. Plaintiff has made no such request-specific showing. *See Coker v. Duke & Co.*, 177 F.R.D. 682, 685 (M.D. Ala. 1998) (denying the production of personnel files because the plaintiff failed to make the showing necessary to require production of sensitive personnel information).

**D. Requests 14 and 15: Are Vague, Unbounded, and Largely Cumulative of the <u>Discovery Already Directed to the Closure Decision.</u>**

Request 14 seeks "all documents" notifying any Miami-office employee that the office was not profitable, without a time limitation or identification of the type of communication sought. Plaintiff argues that a company likely would have warned an underperforming office and that the existence or absence of such warnings may bear on pretext. D.E. 51 at p. 8. But that hypothesis does not justify an unlimited request for every document that could be characterized as a notification. To the extent responsive, nonprivileged documents directly concerning the reason for the Miami | South Florida office's closure exist within the reasonable search conducted for the already-served discovery, those materials are addressed by the targeted discovery. The Court should not compel an unbounded duplicative search based on Plaintiff's supposition about how Raymond should have managed the office and the notification Plaintiff believes it should have provided.

Request 15 is broader still: "all documents stating the purpose of the Miami South Florida Office." Plaintiff now theorizes that Miami may have functioned as a "gateway" whose role was to develop business for other offices. D.E. 51 at p. 8. The request has no time limitation and "purpose" is undefined. Plaintiff identifies no document, policy, witness testimony, or other factual predicate establishing that Raymond maintained a discrete set of "purpose" documents. His newly articulated gateway theory does not make every document that could arguably describe an office function discoverable.

**E. Requests 16 and 17: Raymond's Response Should Be Read as a Targeted Production of Business Generated by the Miami Office - Not as the Opposite of the Request.**

Plaintiff contends Defendant answered Request 16 backwards because the response stated it would produce documents sufficient to show projects "referred to" Miami employees, while the request seeks clients or projects brought or referred to Raymond by Miami employees. D.E. 51 at

p. 9. While the wording in the response may have been inartful, read in context with Request 16 and the response to Request 17, Raymond's intended production of documents is sufficient to show clients or projects referred or brought to Defendant by Miami | South Florida office employees during 2023 through the closure, together with the responsive financial information available through the production under Request 2. The Court need not overrule Defendant's proportionality objections to correct that drafting ambiguity.

The temporal limitation remains appropriate. Plaintiff seeks every such client or project from 2019 through the present even though the office closed in February 2024. Defendant agreed to produce the period most closely connected to the closure decision. Plaintiff's desire to trace every business-development relationship over several years is disproportionate to the incremental relevance of those older records.

**F. Requests 18–20: Are the Clearest Example of Plaintiff Attempting to Litigate the Wisdom of Raymond's Business Decision.**

Requests 18 through 20 seek, for every Raymond office and for every year beginning in 2019, documents comparing office profitability, office income, and office expenses. Plaintiff calls Request 18 "narrowly tailored" because he wants to know why Miami was singled out. D.E. 51 at p. 9-10. It is not narrow. It requires multi-year financial discovery for every office, regardless of market, size, discipline mix, management, business model, or relationship to Plaintiff.

More fundamentally, Plaintiff's argument assumes that if some other office performed as poorly as—or worse than—Miami, Defendant was required to close that office instead. The ADEA imposes no such requirement. Employers may make business choices that a plaintiff, a court, or a jury might regard as mistaken, inconsistent, or unwise so long as the decision is not discriminatory. *Alvarez*, 610 F.3d at 1266.

Defendant has agreed to produce financial information concerning the Miami | South Florida office itself. That production permits Plaintiff to test the factual premise Raymond actually invoked. Rule 26 does not require Defendant to open the books of every office so Plaintiff can conduct a retrospective contest over which location management should have closed.

### G. Plaintiff's Request for a Blanket Privilege Log and Amended Responses Does Not Justify Granting the Motion in Full.

Plaintiff asks for an order compelling amended responses stating whether materials are being withheld on each objection and for a privilege log identifying each withheld or redacted document. The Court's procedural requirements do not establish that Plaintiff is substantively entitled to the overbroad discovery sought. To the extent the Court concludes a response requires clarification, the appropriate remedy is a targeted supplementation—not an order overruling all objections and compelling the entire Second Request for Production.

## IV. CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court deny Plaintiff's Motion to Compel Better Responses and Responsive Documents to Plaintiff's Second Request for Production. Alternatively, any order should preserve Raymond's reasonable temporal and subject-matter limitations, confine comparator discovery to genuinely comparable employees or positions, and require only targeted clarification or supplementation where the Court finds it necessary. Defendant further requests that the Court deny any request for award of fees or expenses because Raymond's objections and proportionality limitations were substantially justified.

Respectfully submitted this 12th day of August 2026.

By: /s/ Diane P. Perez____________
Diane P. Perez, B.C.S.
Florida Bar No. 41869
E-mail: *diane@dianeperezlaw.com*

**DIANE PEREZ, P.A.**
100 Almeria Avenue, Suite 201
Coral Gables, Florida 33134
Telephone: (305) 985-5676
*Counsel for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document is being served this 12th day of August 2026, on all counsel of record on the Service List below.

*/s/ Diane P. Perez*
Diane P. Perez, B.C.S. (41869)

**SERVICE LIST**

James L. Berenthal, Esq. (126035)
E-mail: jlb@berenthalaw.com
David Berenthal, Esq. (159220)
E-mail: dwb@berenthalaw.com
**BERENTHAL & ASSOCIATES**
2100 Ponce de Leon Boulevard, Mezzanine
Coral Gables, FL 33134-5207
Telephone: (212) 302-9494
*Counsel for Plaintiff*